(901 P.2d 35)

No. 71,749

STATE OF KANSAS, *Appellee*, v. TONY T. CALDWELL, *Appellant.*

Opinion filed August 11, 1995.

*Rick Kittel*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*David Lowden*, assistant district attorney, *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before BRAZIL, C.J., LARSON, J., and DANIEL L. LOVE, District Judge, assigned.

LARSON, J.: Tony T. Caldwell appeals his conviction of two counts of aggravated assault, K.S.A. 1993 Supp. 21-3410, one count of discharging a firearm at an occupied building, K.S.A. 1993 Supp. 21-4219(b), and one count of criminal possession of a firearm, K.S.A. 1993 Supp. 21-4204.

The four issues raised include the sufficiency of the evidence establishing the discharge of a firearm at an occupied building con-

viction, the limitation imposed on the cross-examination of a prosecution witness, a jury instruction, and the sentence imposed by the trial court.

This case arises out of a classic "drive-by shooting." The principal issue is whether the nonexistence of apprehension of bodily harm by the building's occupants must be proved. This necessitates a detailed examination of the surrounding facts.

Jermaine Parks, Lamont Fox, and Kari Manning were at their Wichita residence one night in July 1993. Parks had told Fox upon coming home that he had been followed by Marcell Williams. Great enmity existed between Williams and Parks because of the alleged paternity of a child, and they had had confrontations in the past, including one involving a firearm.

At about 11:00 p.m., Parks and Fox heard music outside the house and saw a distinctive car, known to belong to Williams, driving by. They told Manning, who was completing a shower, to hurry and get dressed and stay inside close to the floor or behind a waterbed. Parks and Fox turned out the lights and went out on the front porch.

A short time later, Williams' car approached the house again, and as it passed, numerous shots, perhaps 10, were fired by someone leaning out of the passenger side window. Parks and Fox threw themselves to the floor and heard shots, which they identified as consistent with a nine millimeter pistol, striking above them. Fox also testified he saw a shotgun sticking out the car window.

Manning was dressed and in the living room. She testified: "I heard like rocks hitting the house and I just laid down on the ground." She initially said she had no idea what was happening but indicated she was scared. She said Fox's manner contributed to her feelings.

Williams testified at the jury trial that he picked up Caldwell that evening to drive by Parks' house and find out why Parks had driven by Williams' house earlier in the evening. They drove by Parks' house three times. On the third occasion, he said, Caldwell told him to slow down, at which point Caldwell pulled out a gun and shot at the house. Williams testified that he told Caldwell not to

shoot and that his shotgun remained on the floor of his car during the incident.

Prior to Caldwell's trial, the prosecution obtained an order limiting the cross-examination of Williams. Caldwell's counsel sought to question Williams about the details of his previous altercations with Parks but was restricted to inquiries concerning the prior confrontations contained in police reports.

Although Caldwell argued that the animosity between Parks and Williams was essential to his theory of defense—that Williams did the shooting and then blamed Caldwell—the trial court refused to permit what was called "a fishing expedition" on cross-examination and ruled that detailed information about Williams' relationship with Parks would have to be presented in Caldwell's case in chief. At trial, Caldwell did not seek a change in the pretrial order or proffer what evidence would be elicited by questioning Williams about the details of his conflicts with Parks.

During the trial, the gun used in the shooting was linked to Caldwell through a subsequent armed robbery and ballistics tests. Caldwell introduced evidence that weapons are sometimes exchanged among gang members and that he was at home at the time of the shooting. After guilty findings, Caldwell has appealed.

*Is there sufficient evidence to support Caldwell's conviction of discharging a firearm at an occupied building?*

If the sufficiency of evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Timley*, 255 Kan. 286, 307-08, 875 P.2d 242 (1994). The conviction which Caldwell contends there was insufficient evidence to sustain arises out of an alleged violation of K.S.A. 1993 Supp. 21-4219(b), which states:

"Except as provided in K.S.A. 21-3411, and amendments thereto, criminal discharge of a firearm at an occupied building or occupied vehicle is the malicious, intentional and unauthorized discharge of a firearm at a dwelling, building, structure, motor vehicle, aircraft, watercraft, railroad car or other means of conveyance

of persons or property in which there is a human being *who is not placed in immediate apprehension of bodily harm.*

"Criminal discharge of a firearm at an occupied building or occupied vehicle is a severity level 7, person felony." (Emphasis added.)

Caldwell's central contention is that there was insufficient evidence to establish beyond a reasonable doubt that Manning was not placed in immediate apprehension of bodily harm.

Manning's testimony can be construed to lead to different conclusions as to her level of fear and at what time it occurred, but we first consider if the prosecution is required to disprove her "immediate apprehension of bodily harm."

The necessity of proving the nonexistence of the immediate apprehension of bodily harm in a building's occupant under K.S.A. 1993 Supp. 21-4219(b) is a question of statutory interpretation over which our review is unlimited. See *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). The fundamental rule of statutory construction is that the ascertainable intent of the legislature governs. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993).

"[T]he legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results." *Todd v. Kelly*, 251 Kan. 512, 520, 837 P.2d 381 (1992). Although our criminal statutes are construed strictly against the State, *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 818, 861 P.2d 1334 (1993), this rule is subordinate to the rule that judicial interpretation must effectuate legislative design and the legislature's true intent. *State v. Schlein*, 253 Kan. 205, 215, 854 P.2d 296 (1993). " 'In determining legislative intent, courts are not limited to a mere consideration of the language used, but look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished and the effect the statute may have under the various constructions suggested.' " *State v. Gonzales*, 255 Kan. 243, 249, 874 P.2d 612 (1994).

The legislative history of K.S.A. 1993 Supp. 21-4219(b) shows that its purpose was to fill "some current gaps in the law." Minutes of the Senate Committee on Judiciary, March 16, 1992 (testimony of co-sponsor Rep. Janice Pauls). It was designed to target drive-

by shootings by ensuring such activity was always a felony offense. See Minutes of the Senate Committee on Judiciary, March 16, 1992 (testimony of Kansas County and District Attorneys Association). Previously, such conduct would be a felony only if it had the collateral effect of causing an aggravated assault, aggravated battery, homicide, or other felony offense. At the same time, the legislature wanted to avoid "stack[ing] charges against the accused." Report of Subcommittee on Drive-By Shooting, House Judiciary Committee, February 25, 1992.

In response to Caldwell's contention that the State must prove beyond a reasonable doubt that Manning was not put in immediate apprehension of bodily harm, the State contends the statute was intended to cover all drive-by shootings in which an aggravated assault against the occupant could not be proven. In that way, the new statute would fill the gap in prior law and ensure a felony conviction. This purpose would not be achieved if the State must prove the lack of immediate apprehension of bodily harm beyond a reasonable doubt because, where the evidence of apprehension is mixed and a doubt exists as to that element, the perpetrator of a drive-by shooting could not be convicted of either offense. It is apparent that the legislature's intent in enacting K.S.A. 1993 Supp. 21-4219(b) was to make discharging a firearm at an occupied building, regardless of the victim's state of mind, a felony. Interpreting the statute to require affirmative proof by the State of the absence of an immediate apprehension of bodily harm beyond a reasonable doubt would circumvent this purpose.

The difference between the statutes at issue here, 21-3410 and 21-4219(b), is somewhat analogous to the historic difference between first- and second-degree murder in our former statutes. First-degree murder required premeditation or the commission of a felony, while second-degree murder, prior to the 1992 amendments, expressly required the killing to be without premeditation. K.S.A. 21-3401; K.S.A. 21-3402. In construing these statutes, Kansas courts have not required the State to affirmatively prove the absence of premeditation beyond a reasonable doubt to convict a defendant of second-degree murder. Instead, the statutes have been construed to mean that second-degree murder was the ap-

propriate charge *in the absence of affirmative proof* establishing premeditation beyond a reasonable doubt.

This holding is well established by *State v. Carpenter*, 228 Kan. 115, 126, 612 P.2d 163 (1980), where now Chief Justice Holmes clearly held:

"Premeditation (or its equivalent, the proof of a felony) is a necessary element in first-degree murder not required in proof of second-degree murder, but it is not incumbent upon the State to disprove premeditation when there is a malicious killing and defendant has only been charged with second-degree murder."

Similarly, in this case, discharging a firearm at an occupied building is the proper crime of conviction in the absence of affirmative evidence showing beyond a reasonable doubt an immediate apprehension of bodily harm.

It is clear to us that the Kansas Legislature intended that a person found guilty of discharging a firearm at an occupied building be convicted of a felony whether or not the person or persons inside were put in immediate apprehension of bodily harm. The legislature intended to prohibit stacking offenses by convicting a defendant for both aggravated assault and discharging a firearm at an occupied building where the offenses involve the same victim and the same criminal act. Since both offenses carry the same severity level and both are person felonies, a defendant is not prejudiced by the State's decision to pursue one charge rather than the other.

In instances where the State charges a defendant under 21-4219(b) rather than the aggravated assault statute, 21-3410, we hold the State has no obligation to present proof with regard to the victim's state of mind any more than the State must prove the absence of premeditation in a second-degree murder case. Therefore, we discern no fault with the State's evidence even if the evidence were construed to mean Manning *was* put in immediate apprehension of bodily harm.

A more logical conclusion, and one that would make the previous discussion academic, would be to conclude that Manning's testimony indicated she was frightened by the whole situation, not necessarily by the gunshots, which she in fact believed to be rocks

hitting the house. She stated she did not know they were gunshots until after the incident was over. Construing the evidence in the light most favorable to the prosecution, as we are required to do on appeal, this could have been considered by the jury to show that she was not placed in immediate apprehension of bodily harm. Even the gravest offenses can be proven by circumstantial evidence. *State v. Reed,* 256 Kan. 547, Syl. ¶ 7, 886 P.2d 854 (1994).

Under either interpretation of Manning's testimony, we hold the State sustained its required burden of proof that Caldwell was guilty of violating K.S.A. 1993 Supp. 21-4219(b).

*Did the trial court deny Caldwell the right to fully present his theory of defense when it limited his cross-examination of Marcell Williams?*

This issue may be resolved by the State's contention that it was not preserved for appeal because of Caldwell's failure to move to reconsider the motion in limine at trial or make a proffer of the evidence. See *State v. Johnson,* 255 Kan. 252, 253-54, 874 P.2d 623 (1994). Although the motion in limine was *denied* in *Johnson,* while here it was *granted,* the rule is clear that "to predicate error thereon it will be necessary to again present the material or proffer the evidence during trial on a motion to reconsider." *Brunett v. Albrecht,* 248 Kan. 634, Syl. ¶ 3, 810 P.2d 276 (1991).

Caldwell never showed what noncumulative evidence he had hoped to show through cross-examination of Williams. The court permitted all the questions Caldwell chose to ask. And, no reason was ever given as to why cross-examination should have been expanded.

The jury heard evidence of the animosity between Williams and Parks. Caldwell's defense that Williams was the shooter *was* before the jury. It may not have been presented to the extent or depth which he now wishes, but limitation on the extent of cross-examination will not be overturned absent proof of a clear abuse of judicial discretion, which does not here exist. See *State v. Brown,* 235 Kan. 688, Syl. ¶ 1, 681 P.2d 1071 (1984).

*Did the trial court err in instructing the jury?*

The court instructed the jury, over the defendant's objection, as follows:

"It is not a defense that another who participated in the commission of the wrongful act constituting the crime has not been convicted of the crime or any lesser degree."

Caldwell contends this instruction is erroneous because the evidence showed that either he was the person who committed the criminal act or he was not present when the crime was committed. He urges that where there is an objection to an instruction, the evidence supporting the instruction must be viewed in the light most favorable to the objecting party. That is not our scope of review.

"When reviewing challenges to jury instructions, the instructions are to be considered together and read as a whole without isolating any one instruction. If the instructions properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them, then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Whitaker*, 255 Kan. 118, Syl. ¶ 3, 872 P.2d 278 (1994).

A trial court has a duty to instruct the jury on the law applicable to the theories of the State and the defendant where there is competent supporting evidence. *State v. Hickey*, 12 Kan. App. 2d 781, 784, 757 P.2d 735, *rev. denied* 243 Kan. 781 (1988).

Competent evidence supported the challenged instruction. Caldwell tried to implicate Williams as the shooter. Williams admitted driving the car that was involved in the shooting. Some evidence pointed to a shotgun like the one Williams owned as being involved in the aggravated assault. The jury knew Williams had been arrested for the crime. It was appropriate to instruct the jury that any criminal culpability Williams might have should not affect their determination of Caldwell's guilt.

The instruction correctly states that any criminal culpability of Williams is immaterial as a defense in Caldwell's case. Read with the instructions that the State had to prove Caldwell's guilt beyond a reasonable doubt and that only evidence admitted by the trial court should be used in determining Caldwell's guilt, the challenged instruction is a correct statement of law.

*Did the trial court abuse its discretion by imposing a sentence which included an upward durational departure?*

When imposing a departure sentence, the trial court must "state on the record at the time of sentencing the substantial and compelling reasons for the departure." K.S.A. 1993 Supp. 21-4716(a). *State v. Rhoads*, 20 Kan. App. 2d 790, Syl. ¶ 3, 892 P.2d 918 (1995), recently held:

"K.S.A. Supp. 21-4716(a) of the Kansas Sentencing Guidelines Act states that a sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines unless the judge finds substantial and compelling reasons to impose a departure. The term 'substantial' refers to something that is real, not imagined, something with substance and not ephemeral. The term 'compelling' implies that a court is forced, by the facts of a case to leave the status quo, or go beyond what is ordinary."

The *Rhoads* court concluded that the criminal history of a defendant could not serve as a substantial and compelling reason for departure since it is utilized in computing and already affects the presumptive sentence. We also admonished: "[T]he trial court must articulate reasons why it is compelled to depart that are real and not just conclusions." 20 Kan. App. 2d at 800.

In this case, the trial court justified its departure based on the following factors: the escalating nature of Caldwell's crimes, the legislative intent to punish persons shooting at occupied houses more severely than persons shooting at unoccupied houses, the possibility that Caldwell could have killed someone, Caldwell's failure to take advantage of prior lenient sentences, Caldwell's failure to take responsibility for his actions, and the fact that Caldwell was the only aggressor.

We hold the reasons given by the trial court, like those in *Rhoads*, are merely conclusory and fail to articulate why the factors should translate into a maximum durational departure. No valid reason was given as to why Caldwell's failure to take advantage of prior leniency should compel departure here.

In addition, some of the factors cited are clearly inappropriate. The legislature's intent to punish one crime more severely than another is incorporated in the presumptive sentences in the sen-

tencing grid through the assignment of severity levels to each crime.

Similarly, the possibility that Caldwell could have killed someone when committing aggravated assault and firing at an occupied house is not unique to the circumstances of his case and does not force the court "to leave the status quo, or go beyond what is ordinary." 20 Kan. App. 2d 790, Syl. ¶ 3.

All the convictions are affirmed. The sentences are vacated, and this case is remanded for resentencing.