No. 74,161

STATE OF KANSAS, *Appellee*, v. SHAWN ALDERSON, *Appellant.*
(922 P.2d 435)

Opinion filed July 12, 1996.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with him on the brief for appellant.

*Debra S. Peterson*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: This is a direct appeal by Shawn Alderson from his convictions for felony murder and severity level 4 aggravated battery. The trial court imposed an upward durational departure on the aggravated battery charge. The defendant raises nine issues, including sufficiency of evidence, merger, lesser included offenses, failure of the trial judge to recuse himself at the trial and at the sentencing, failure to sequester witnesses, upward durational departure sentence, admissibility of victim's prior conviction, and cumulative error.

On the evening in question, the defendant was riding around Wichita in a red Chevrolet Blazer sport utility vehicle accompanied by Vernon Harris, Jr. The defendant and Harris were part of a three-vehicle caravan that was together throughout the evening. The occupants of the caravan vehicles were witnesses to the events that transpired throughout the evening.

The red sport utility vehicle in which the defendant and Harris were riding was a stolen vehicle. It was owned by the trial judge's brother and was stolen from the home of the trial judge's father,

Owen Ballinger, a retired district court judge. The defendant occupied the stolen vehicle as both a passenger and driver during the evening. Depending on whose testimony is believed, he drove the stolen vehicle to the scene of the felony murder and had either exited the vehicle or was sitting in the driver's seat when he fired the fatal shot.

While the defendant was driving the red sport utility vehicle around, the caravan observed a fight at the Westway parking lot. The occupants of all three vehicles stopped in the parking lot to watch the fight.

The fight involved Larry Goodwin, the victim of the felony murder, and his friend, Jeff Tipton, who were from Hutchinson and had gone to Wichita for the evening. Robert Ross, Victor Trudo, and Pat Benware were also involved in the parking lot fight. These three had stopped in the parking lot when Goodwin and Tipton pulled into the parking lot and accused the trio of "cutting them off" in traffic. Ross, Trudo, and Benware proceeded to beat Tipton into a state of unconsciousness. At this time, the three-vehicle caravan, led by the red sport utility vehicle, with the defendant as the driver and Harris as a passenger, pulled into the parking lot.

While Tipton was lying on the ground, Harris got out of the passenger side of the stolen red sport utility vehicle. Harris then fired two or three shots into the rear of Goodwin's car. Goodwin was in the driver's seat at the time. No words were exchanged between Goodwin and Harris. The record indicates the defendant and Harris had never seen Goodwin or Tipton before the incident.

After Harris fired the shots, Goodwin drove his car in a circle, ending up in the same place and facing the same direction from which he started. Goodwin's vehicle was next to the stolen utility vehicle facing in the opposite direction with the drivers adjacent to each other. Ross testified that the defendant fired three shots from the Blazer's driver's seat into Goodwin's car. One of the bullets struck the back of Goodwin's left shoulder, injuring Goodwin's spine, paralyzing him from the neck down, and causing his death a few days later.

The defendant testified he was outside of the stolen vehicle and that he fired in self-defense to prevent Goodwin from running over

him. This contradicted the defendant's previous statement in which he denied he was even at the scene. The physical evidence indicates the bullet that killed Goodwin was fired from the side of the car and slightly from the rear.

After Goodwin was shot, the three-car caravan left and ultimately resumed cruising the streets. As they were driving, they came upon two young persons walking beside Hillside Street. The defendant leaned out of the passenger side of the red sport utility vehicle and fired a shot at the pedestrians. When two people in the caravan, Heather Marlett and Richenda Gallardo, looked back, they saw that one of the pedestrians had fallen to the ground. When Heather Marlett later asked the defendant why he shot the young man, the defendant laughed and told her "to keep it on lockdown."

Tyrone Elam was one of the young men who had been walking along Hillside. He testified at trial. On the evening of June 15, 1994, Tyrone had been walking with his brother when three cars, including a red sport utility vehicle, passed them. Tyrone heard someone yell, "You're as dead as hell," and then Tyrone fell to the ground. Tyrone had been shot and part of the bullet is still in his body. Because of this wound, one of Tyrone's kidneys and 52% of his liver had to be removed, and his lungs collapsed twice. Tyrone testified that he had never seen the defendant before the evening of June 15.

According to the defendant, he and Harris, who was driving the red sport utility vehicle at the time, decided they would try to scare the pedestrians. The defendant stated that he fired the .9 mm gun one time out of the passenger window. Based on these events, the defendant was charged with and convicted of felony murder and aggravated battery.

Prior to sentencing, the prosecutor filed a motion to depart upward as to the aggravated battery conviction, noting that the defendant acted without provocation and that his "unprovoked attacks clearly demonstrate that he is a menace to anyone who happens to cross his path." The prosecutor requested that "[f]or the protection of the citizens of this state from the defendant's random attacks the longest possible term should be imposed." The defendant's presumptive guidelines sentence for the aggravated

battery conviction was 38 to 43 months in prison with post-release suspension of 24 months. The trial court granted the State's motion for upward departure based on the "senseless and random nature of the crime." The defendant was sentenced to life for felony murder and to a consecutive term of 86 months for the aggravated battery conviction.

## I. RECUSAL

The day before jury selection began, the Honorable Richard T. Ballinger, the district judge assigned to the case, informed counsel for both parties that he had an extrajudicial connection to the case. The red sport utility vehicle driven by the defendant on the night of the shootings belonged to the judge's brother and had been stolen from the home of the judge's father. In informing counsel of this information, the following conversation occurred:

"THE COURT: Excuse me. We have a potential problem here. And I apologize for not bringing this up earlier. The stolen vehicle that was involved, the '92 Blazer, was my brother's car and was stolen from the retired Judge Ballinger's house. I'm not a witness to that case, nor do I know anything about it; but, like I said, it was stolen from retired Judge Ballinger's house while my sister-in-law was staying there.

. . . .

"Miss Roberts, you want to talk to your client about that? I can't see any potential problem here, but it is a factor.

"MS. ROBERTS: Your Honor, I briefly conferred with my client; and it's the defense's position that we prefer to have another judge hear the case.

"THE COURT: Is he charged with the theft of this vehicle?

"MS. ROBERTS: No.

"THE COURT: Well, then, let me,—well, okay. I'll confer with the Court. We'll see who we [can] find available for him. Perhaps Judge Kennedy might be able to assist. We'll take a short recess, and I'll check.

"(Pursuant to the recess, proceedings continue as follows:)

"THE COURT: Record should reflect that we are back in session on 94 CR 1189, State of Kansas versus Shawn Alderson. Quite a bit has gone on since last we met. Let the record catch up with us. I went back and talked to the administrative judge, Judge Owens. A lot of things are going on this week. First of all, the new judges' school is going on; and four of our judges have left the district. Coincidentally, all four of those are in the criminal division. They will be out of town till . . . the end of this week. . . . That has caused a severe shortage of judges. They have brought in a couple of retired judges currently to handle the

preliminary hearing dockets and plea dockets, and because of that there are no other judges available for this trial. That's a major factor in this Court's decision.

"Second thing, back in chambers, off the record I had asked Miss Roberts and Mr. Puntch if the State was planning on calling either Mrs. Ballinger or Mr. Ballinger as a witness in these cases. And I was informed that, no, no, even though endorsed, they were not going to be called. I also asked Mr. Puntch in the presence of Miss Roberts why the State would feel it is pertinent to this case to even identify the owner of this vehicle. And again this is really a collateral issue. Mr. Puntch indicated it was an identification question. The car was stolen; but who it was stolen from and the circumstances were not pertinent. And based on the State's representation that they do not plan on calling any of the Ballingers, because this Court feels, and now the State does, too, that it's irrelevant for purposes of this hearing. I don't feel that it's relevant, nor do I feel a conflict exists. This defendant is not charged with a theft. Nor is he connected in any way. Apparently, he was simply riding in this vehicle; and he was charged with the shootings and the resulting death.

"Miss Roberts, I have informed you; and you have indicated that you would remain objectionable to my rulings. But I have informed you that I am not going to recuse myself at this time. I don't see a conflict. Either—certainly at the trial stage. The only potential conflict would be in a sentencing stage. And we're talking about something that is just so far remote when you view what the charges are. this Court doesn't feel that there's any conflict. And so I'm going—I informed both parties; the record knows what's going on; and I am going to go ahead and hear the case.

"You want to add something to the record or put anything else on the record, Miss Roberts?

"MS. ROBERTS: No, Your Honor. My objection is just noted for the record that you already put on. Thank you.

"THE COURT: Mr. Puntch, have I left something out or something I should say?

"MR. PUNTCH: Yes, there is something else I would like to say. Your Honor. I'm not going to read the name of Nancy Ballinger, who is an endorsed witness to the jury when I talk about who the witnesses may be. I do not intend to ask any witness, the car was stolen, his Blazer, who stole it, where it was stolen from, the issue of who actually took it. It's the State's position and most probably the co-defendant in this case, not Mr. Alderson, although Mr. Alderson did drive the vehicle some. There will be evidence of that fact. As the Court mentioned, it's possible that Judge Brooks might become free from his other jury trial. I need to tell you that to see if it might [a]ffect your decision.

"THE COURT: Apparently you have some more later information than I have.

"MR. PUNTCH: I think so, Your Honor.

"THE COURT: He was assigned a jury trial, and you say that might be for plea?

"MR. PUNTCH: When I left, it was either for plea or trial in this court.

"THE COURT: Okay. That sounds like a normal Monday. Okay. Well, let's proceed. Excuse the interruption."

On appeal, the defendant contends that the trial judge erred when he refused to recuse himself from the trial at the defense counsel's request. Thus, the defendant asserts that he was denied his federal and state constitutional rights to be tried before a fair and impartial tribunal.

The State points out, however, that the defendant did not file a motion for change of judge under K.S.A. 20-311d(a). Further, when the judge refused to recuse himself, the defendant did not file an affidavit, pursuant to K.S.A. 20-311d(b) and (c)(5), which requested the judge's recusal from the case and which stated the facts for the defendant's belief that the judge possessed bias, prejudice, or interest toward the case.

K.S.A. 20-311d states:

"(a) If a party or a party's attorney believes that the judge to whom an action is assigned cannot afford that party a fair trial in the action, the party or attorney may file a motion for change of judge. The motion shall not state the grounds for the party's or attorney's belief. The judge shall promptly hear the motion informally upon reasonable notice to all parties who have appeared in the case. If the judge disqualifies the judge's self, the action shall be assigned to another judge by the administrative judge. If the judge refuses to disqualify the judge's self, the party seeking a change of judge may file the affidavit provided for in subsection (b). If an affidavit is to be filed it shall be filed forthwith.

"(b) If a party or a party's attorney files an affidavit alleging any of the grounds specified in subsection (c), the administrative judge shall at once determine, or refer the affidavit to another district judge for prompt determination of, the legal sufficiency of the affidavit. If the affidavit is filed in a district court in which there is no other judge who is qualified to hear the matter, the administrative judge shall at once notify the departmental justice for the district and request the appointment of another district judge to determine the legal sufficiency of the affidavit. If the affidavit is found to be legally sufficient, the case shall be assigned to another judge.

"(c) Grounds which may be alleged as provided in subsection (b) for change of judge are that:

. . . .

"(5) The party or the party's attorney filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial

enforcement of post-judgment remedies. Such affidavit shall state the facts and the reasons for the belief that bias, prejudice or an interest exists."

Based on the defendant's failure to follow these procedures, the State contends that the defendant is barred from appealing the judge's refusal to recuse and is barred from requesting a new trial with a new judge. In support of this argument, the State cites to *State v. Ames*, 222 Kan. 88, Syl. ¶ 6, 563 P.2d 1034 (1977). *Ames* found that the defendant did not timely file his affidavit for a change of judge pursuant to an older version of K.S.A. 20-311f; thus, the district court and the appellate court refused to rule on the merits of the motion. 222 Kan. at 96-98. In so holding, the court stated: "A party who shows a judge is prejudiced against him has a right to have his case tried before some other judge . . . . But failure to timely file an affidavit alleging prejudice as required by statute . . . may bar the movant's obtaining a change of judge." 222 Kan. 88, Syl. ¶ 6. (K.S.A. 20-311d and 20-311f have been amended since *Ames* was decided to require a defendant to first file a motion for change of judge within 7 days after pretrial. Under current law, if the judge refuses to disqualify himself or herself upon the defendant's motion, the defendant should file an affidavit seeking recusal.)

The judge did not inform the parties about his extrajudicial connection with the case until the day before the trial commenced. The judge apologized for not informing the parties of this matter sooner. Under these circumstances, the defendant contends that the filing of an affidavit was not necessary.

We acknowledge the "lateness of the hour," but the defendant did have time to follow K.S.A. 20-311d, albeit that might have been an inconvenient loss of time that could have been better used in trial preparation. The defendant had time to file a motion and an affidavit because the issue was presented to both the trial judge and the judge in charge of the criminal division before the trial judge made the decision not to recuse himself. However, due to the late disclosure, we are somewhat reluctant to bar the defendant's claim simply because the defendant did not make an effort to comply with K.S.A. 20-311d. Nonetheless, the issue is irrelevant

because allowing the defendant to raise the issue of the district court's refusal to recuse would be of no comfort to the defendant.

In determining whether the defendant received a fair trial or whether his due process rights were violated when the trial judge refused to recuse himself, this court has promulgated a two-part test: (1) Did the trial judge have a duty to recuse himself from this case because he was biased, prejudicial, or partial? (2) If the judge did have a duty to recuse and failed to do so, was there a showing of actual bias or prejudice to warrant setting aside the judgment of the trial court? *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984).

Under the Kansas Code of Judicial Conduct, a judge has a duty to recuse himself or herself from a case "in which the judge's impartiality might reasonably be questioned, including . . . instances where . . . the judge has a personal bias or prejudice concerning a party." Rule 601A, Canon 3E(1)(a) (1995 Kan. Ct. R. Annot. 402, 407). In *State v. Logan*, 236 Kan. at 86, this court clarified when a judge's impartiality "might reasonably be questioned" regarding the judge's personal prejudice against a party. A judge should disqualify himself or herself if the circumstances and facts of the case "create reasonable doubt concerning the judge's impartiality, not in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances." 236 Kan. at 86.

Even if this court should find that the district judge had a duty to recuse and failed to do so, the second step of the due process test is not met in that there is no showing of actual bias or prejudice in the trial. "Bias" refers to the judge's mental attitude toward a party to the litigation. See *State v. Foy*, 227 Kan. 405, Syl. ¶ 2, 607 P.2d 481 (1980). Bias and prejudice exist if a judge harbors a "hostile feeling or spirit of ill will against one of the litigants, or undue friendship or favoritism toward one." 227 Kan. at 411. There is no indication that the district judge harbored a hostile feeling or spirit of ill will against the defendant throughout the trial. The judge allowed the defendant his self-defense jury instruction even though the judge did not think the instruction was justified. It was the jury

which convicted the defendant, not the judge. See *State v. Griffen*, 241 Kan. 68, 72-73, 734 P.2d 1089 (1987). The record does not support the defendant's claim that the judge actually exhibited bias or prejudice at trial. Thus, in any event, the second step of the due process test requiring recusal is not satisfied and reversible error is not present as a result of the trial judge's refusing to recuse himself from the trial. The defendant also claims the trial judge erred in not recusing himself from sentencing the defendant. That issue will be disposed of in section VIII of this opinion.

## II. SUFFICIENCY OF EVIDENCE

The defendant was convicted of felony murder. The underlying felony was criminal discharge of a firearm pursuant to K.S.A. 21-4219. This statute provides:

"(b) . . . [C]riminal discharge of a firearm at an occupied . . . vehicle is the malicious, intentional and unauthorized discharge of a firearm at a . . . motor vehicle . . . in which there is a human being who is not placed in immediate apprehension of bodily harm.

. . . .

"Criminal discharge of a firearm at an occupied building or occupied vehicle which results in bodily harm to a person during the commission thereof is a severity level 5, person felony."

The defendant points out that in order to be convicted of felony murder, the State must prove the underlying felony with which he was charged. See *State v. Chism*, 243 Kan. 484, 491, 759 P.2d 105 (1988). Based on this premise, the defendant asserts that one of the essential elements of the underlying felony criminal discharge of a firearm is that the human being who was shot at in the vehicle "is *not* placed in immediate apprehension of bodily harm." K.S.A. 21-4219(b). The defendant argues that this essential element of the underlying felony was not proven beyond a reasonable doubt in this case. In fact, according to the defendant, the opposite is true because Goodwin, the human being who was shot at in the vehicle, did experience an immediate apprehension of bodily harm.

The defendant points out that when Harris shot the bumper of the car that Goodwin was in, Goodwin became scared and drove the car around the parking lot in a circle. The second set of shots

occurred just a short time later; thus, the defendant contends that the person in the occupied vehicle was placed in immediate apprehension of bodily harm at the time of the shooting. As such, the State failed to prove that Goodwin was *not* placed in immediate apprehension of bodily harm. Thus, the defendant contends there is insufficient evidence to support proof of the underlying felony of criminal discharge and insufficient evidence to support the felony-murder conviction based on such underlying crime.

We find no error. Proof that Goodwin was *"not* placed on immediate apprehension of bodily harm" is not an essential element of the underlying felony of criminal discharge. *State v. Caldwell,* 21 Kan. App. 2d 466, Syl. ¶ 4, 901 P.2d 35 (1995), *rev. denied* September 26, 1995. In *Caldwell,* the Court of Appeals held that the State did not have to affirmatively prove beyond a reasonable doubt that the victim lacked immediate apprehension of bodily harm in order to convict a defendant of criminal discharge of a firearm. Instead, the court found that criminal discharge is the proper crime with which to charge a defendant if there is an absence of affirmative evidence that the victim experienced immediate apprehension, as opposed to aggravated assault, which requires the victim to experience apprehension. The Court of Appeals held that the criminal discharge statute does not require actual proof of the victim's absence of apprehension in order to convict a defendant for this crime. The court analogized the criminal discharge statute to the former second-degree murder statute. To convict a defendant of second-degree murder under the old statute, the State did not have to prove the absence of premeditation beyond a reasonable doubt. Thus, the *Caldwell* court held that the fact that the victim was *"not* placed in immediate apprehension of bodily harm" is not an essential element of the crime of criminal discharge and did not need to be affirmatively proven to convict a defendant of such crime. 21 Kan. App. 2d at 473. In so holding, the Court of Appeals stated:

"It is clear to us that the Kansas Legislature intended that a person found guilty of discharging a firearm at an occupied building [or vehicle] be convicted of a felony whether or not the person or persons inside were put in immediate apprehension of bodily harm. The legislature intended to prohibit stacking offenses by

convicting a defendant for both aggravated assault and discharging a firearm at an occupied building.[or vehicle] where the offenses involve the same victim and the same criminal act. Since both offenses carry the same severity level and both are person felonies, a defendant is not prejudiced by the State's decision to pursue one charge rather than the other.

". . . Therefore, we discern no fault with the State's evidence even if the evidence were construed to mean [the victim] *was* put in immediate apprehension of bodily harm." 21 Kan. App. 2d at 472.

The defendant takes issue with *Caldwell*, contending that its holding is incorrect. The defendant points out that PIK Crim. 3d 64.02-A C. indicates that the lack of apprehension by the victim is an essential element of the crime of criminal discharge and the jury was instructed as such. This is true, but PIK Crim. 3d 64.02-A D. also provides that the crime of criminal discharge is committed if the defendant intentionally and without authorization fires a gun at an occupied vehicle and causes bodily harm to a person, regardless of any apprehension the victim might have experienced.

The defendant also contends that the Court of Appeals' analogy between this statute and the former second-degree murder statute is inappropriate because this statute deals with the victim's state of mind, while the second-degree murder statute deals with the defendant's state of mind. Further, the defendant contends that proving a negative—the absence of apprehension—is not impossible and is often required by statutes. The defendant concludes it was the legislature's intent, based on the direct language of the criminal discharge statute, that proof the person in the vehicle was "not placed in immediate apprehension of bodily harm" is an essential element of the criminal discharge crime which must be proven beyond a reasonable doubt before a defendant can be convicted of the crime. The defendant asserts that there is no substantial evidence to support this element; thus, the underlying crime of criminal discharge is not met and the defendant cannot be convicted for felony murder based on this underlying crime.

When the sufficiency of the evidence to support a conviction is challenged, this court's scope of review is well settled:

"If the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence. viewed in the light most favorable to the prosecution, the appellate court is convinced that a rationale

factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Richmond*, 258 Kan. 449, Syl. ¶ 1, 904 P.2d 974 (1995).

See *State v. Evans*, 251 Kan. 132, Syl. ¶ 1, 834 P.2d 335 (1992).

Looking at the evidence in the light most favorable to the prosecution, a rational factfinder could have found the defendant guilty of criminal discharge. Thus, a rational factfinder could have found the defendant guilty of felony murder.

The record shows the victim's friend had been beaten unconscious by three strangers who were still at the scene and that shots had been fired at the back of his car. Unquestionably, the victim was apprehensive. However, there is no evidence that the victim was apprehensive of this particular defendant. Instead, the evidence is that the victim was not even aware of the defendant's presence.

As the record indicates, several witnesses testified that they saw a black man (Harris) get out of the red sport utility vehicle and shoot the bumper of the victim's car. At this time, the victim drove his car around in a circle, apparently because he was scared. Then the witnesses saw the defendant, who was white, shoot the victim while the defendant was sitting in the driver's seat of the red sport utility vehicle. After the shots, the victim slumped forward. This testimony is supported by the fact that a bullet was found in the bumper of the victim's car and in the front doors of the car. However, the victim told his wife and a police officer before he died that a black man had shot him. Looking at this evidence in the light most favorable to the prosecution, the jury could have found that the victim did not see the defendant shoot at him at all. Instead, the victim only saw Harris shoot at him; thus, he assumed Harris was the one who had fired the fatal shot. The jury could have relied on the other witnesses' testimony and found that, even if the victim did not see the defendant, the defendant was the one who actually shot the fatal bullet. If the victim did not see the defendant shoot at him in the car, then the victim could not have been placed in immediate apprehension of bodily harm of this shooting. The victim may have had apprehension of Harris' shot, but the victim does not appear to have had apprehension of the defendant's shots.

Thus, there is sufficient evidence to support this element of the underlying felony, the underlying felony itself, and the felony-murder conviction. In any event, *Caldwell* is persuasive. We hold that the State is not required to prove beyond a reasonable doubt as an element of the crime of criminal discharge of a firearm that the victim was not placed in immediate apprehension of bodily harm.

## III. MERGER

The defendant contends that he was not properly convicted of felony murder because the underlying felony of criminal discharge of a firearm at an occupied vehicle merged into the crime of felony murder. The State points out that the issue was not raised in the trial court and is not properly before this court. *State v. Ji*, 251 Kan. 3, 17, 832 P.2d 1176 (1992) ("The defendant cannot raise points on appeal which were not presented to the trial court.") Having failed to raise the issue to the trial court, we will not consider it on appeal.

We would point out that the Legislature has determined criminal discharge of a firearm, K.S.A. 21-4219, does not merge with homicide. K.S.A. 21-3436(a)(15).

## IV. LESSER INCLUDED OFFENSES

The defendant was charged with and convicted of first-degree murder (felony murder) and aggravated battery. At trial, the defendant requested that the trial court instruct the jury on the lesser included offenses of first-degree murder, including intentional and unintentional second-degree murder, voluntary manslaughter, and involuntary manslaughter. The trial court refused to instruct on these lesser included offenses, and the defendant contends this was error.

This court reviewed the rules for instructing on lesser included offenses in felony-murder cases in *State v. Nguyen*, 251 Kan. 69, 86, 833 P.2d 937 (1992):

" 'The trial court has an affirmative duty to instruct the jury on all lesser included offenses which are supported by the evidence. [Citations omitted.] Instructions on lesser included offenses must be given even though the evidence supporting those offenses may not be strong. [Citation omitted.]

" 'In *State v. Strauch*, 239 Kan. 203, Syl. ¶ 7, 718 P.2d 613 (1983), we held:

> " 'When murder is committed during the commission of a felony, the rule requiring instructions on lesser included offenses does not apply. The felonious conduct is held tantamount to the elements of deliberation and premeditation which are otherwise required for first-degree murder. It is only when the evidence that the underlying felony was committed is weak, inconclusive, or conflicting that instructions on lesser included offenses may be required.' "

The felony-murder charge was based on the underlying felony of criminal discharge of a firearm under K.S.A. 21-4219. The defendant contends that the evidence is weak and inconclusive to support the elements of this underlying felony. According to the defendant, the elements of the criminal discharge crime include: (1) malicious, intentional and unauthorized discharge of a firearm; (2) at a motor vehicle; (3) in which there is a human being; (4) who is not placed in immediate apprehension of bodily harm.

The defendant admitted firing two or three shots at Goodwin's car, and there is no dispute Goodwin was in the car. The defendant contends that the evidence is weak and inconclusive to support the fourth element—that Goodwin was not placed in immediate apprehension of bodily harm.

We have previously held the fact that Goodwin was not placed in immediate apprehension of bodily harm is not an essential element of the criminal discharge crime. See *State v. Caldwell*, 21 Kan. App. 2d 466, Syl. ¶ 4. Thus, the evidence that the underlying felony of criminal discharge was committed is not weak or inconclusive. As such, no lesser included offense instructions were required, and the trial court did not err.

## V. THE VICTIM'S PRIOR CONVICTION

At trial, the defendant sought to introduce evidence of Larry Goodwin's previous aggravated battery conviction. Finding that this fact was not relevant to the case, the trial court excluded this evidence. The defendant contends that the trial court erred when it denied his request, thereby denying the defendant his constitutional right to present a full and complete defense. According to the defendant, this issue involves an interpretation of constitutional law as to how he is allowed to present his defense. See *State v. Mays*, 254 Kan. 479, 487-88, 866 P.2d 1037 (1994). Thus, the de-

fendant contends that this is a question of law and this court's review is unlimited. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

The record is clear that the defendant was allowed to present his self-defense theory of the case. The trial court instructed the jury on the self-defense theory. The defendant testified that Goodwin's car almost hit a friend of his and was headed toward him. In refusing to present Goodwin's prior conviction of aggravated battery into evidence, the court simply excluded one piece of evidence which, according to the defendant, was relevant to the self-defense theory. The court did not exclude all evidence of the defendant's theory. Thus, a constitutional issue is not at stake, and this court's standard of review is not unlimited. Instead, we determine whether the district court abused its discretion in excluding evidence of Goodwin's prior conviction for aggravated battery. See *State v. Arteaga*, 257 Kan. 874, 894, 896 P.2d 1035 (1995).

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Spresser*, 257 Kan. 664, 667, 896 P.2d 1005 (1995).

"Where self-defense is an issue in a homicide case, evidence of the turbulent character of the deceased is admissible. Such evidence may consist of the general reputation of the deceased in the community, but specific instances of misconduct may be shown only by evidence of a conviction of a crime." *State v. Deavers*, 252 Kan. 149, 156-57, 843 P.2d 695 (1992), *cert. denied* 508 U.S. 978 (1993).

In support of their positions, both parties cite to *State v. Arteaga*, 257 Kan. 874. In *Arteaga*, the defendant was convicted of first-degree felony murder and attempted aggravated robbery. The facts involved the meeting in an alley among the defendant, Arteaga, and a few of his friends and Jerry Anderson and David Culbertson, all of whom had been drinking. The victim, Anderson, received a fatal wound caused by a knife held by Arteaga. At trial, the jury was presented with three different theories of the killing—during an attempted aggravated robbery, in self-defense, or by accident.

In analyzing this issue, the *Arteaga* court cited to K.S.A. 60-447(a), which provides:

"[W]hen a trait of a person's character is relevant as tending to prove conduct on a specified occasion, . . . evidence of specific instances of conduct *other than evidence of conviction of a crime* which tends to prove the trait to be bad shall be inadmissible."

In applying this statute, the *Arteaga* court stated:

"This court has stated that when self-defense is an issue in a homicide case, evidence of the turbulent character of the deceased is admissible. Specific instances of misconduct may be shown only by evidence of a conviction of a crime. *State v. Deavers*, 252 Kan. 149, 156-57, 843 P.2d 695 (1992), *cert. denied* 508 U.S. 978 (1993).

. . . .

"Here, the trial court did not abuse its discretion in excluding evidence of Culbertson's prior conviction for domestic battery. Culbertson's role in the incident leading to Anderson's death was relevant to the defendant's claim of self-defense. The defendant's version was that Culbertson pushed him as Culbertson and Anderson attempted to flee with the marijuana. The defendant also testified that Culbertson was being belligerent, and there was evidence that Culbertson was intoxicated. The facts of Culbertson's prior conviction were that he was intoxicated and that it was in a domestic situation. The prior conviction, while possibly relevant, would have only a minor, if any, bearing on whether Culbertson was violent on this occasion. The evidence of Culbertson's violence on this occasion was so limited that the trial court did not abuse its discretion in excluding evidence of the prior conviction in a domestic situation." 257 Kan. at 894-95.

Here, the jury was instructed on self-defense. Thus, Goodwin's alleged character trait of violence was relevant to prove he was violent and aggressive on the night in question by starting a fight or trying to run the defendant over, thereby requiring the defendant to act in self-defense. As such, relevant evidence of specific instances of prior violent conduct to prove Goodwin possessed a violent character trait could have been introduced through prior criminal convictions. In *Arteaga*, the court did not admit Culbertson's prior criminal conviction because it found that Culbertson's prior conviction for domestic violence had little bearing on whether Culbertson would be a violent aggressor in an alley fight with strangers. 257 Kan. at 894-95.

In this case, the trial court did not know and this court does not know the circumstances which surrounded Goodwin's previous aggravated battery conviction. It is not clear if the conviction involved Goodwin starting a fight with others, or trying to run another over

with his car, or domestic violence. Thus, the trial court did not know if the prior aggravated battery conviction had any bearing on whether Goodwin would be violent by starting a fight in a parking lot with a group of strangers or by trying to run the strangers over with his car. The record does not give a clue as to when or what occurred in the victim's prior aggravated battery conviction. Since this information was not available, we cannot say the trial court abused its discretion by refusing to allow the prior conviction into evidence.

## VI. SEQUESTRATION OF WITNESSES

The district court made the following statement in regard to the sequestration of witnesses: "The record should reflect that Ms. Roberts [defense counsel] asked the court to sequester the witnesses, and the court denied that request."

The defendant appeals the trial court's refusal to sequester the witnesses. Both parties agree that the decision to sequester witnesses during a criminal trial is discretionary with the trial court. *State v. Ralls*, 213 Kan. 249, Syl. ¶ 6, 515 P.2d 1205 (1973). "Judicial discretion must . . . be considered as exercisable only within the bounds of reason and justice in the broader sense and be considered abused only when it plainly overpasses those bounds." *State v. Lumbrera*, 257 Kan. 144, 148, 891 P.2d 1096 (1995).

The defendant contends that the trial court's refusal to sequester the witnesses, without providing any reasons to justify the decision, was arbitrary and, thus, an abuse of discretion. According to the defendant, the act of sequestering witnesses furthers the truth-finding process because when witnesses are separated, they cannot change their testimony to make it consistent with the testimony of previous witnesses. The defendant contends that sequestration was particularly important in this case because there were so many witnesses, because three of the witnesses were acquainted with each other, and because one of these three witnesses had a prior juvenile adjudication regarding dishonesty. Thus, to secure the integrity of the truth-finding process, the defendant argues that sequestration, at least of these three witnesses, was necessary.

On the other hand, the State contends that the trial court did not abuse its discretion. According to the State, the defendant has failed to show that the district court acted arbitrarily, fancifully, or unreasonably. Further, the State argues that the truth-finding process was not compromised by the trial court's refusal to sequester witnesses. The fact that three of the witnesses knew each other and that one of these witnesses had a prior juvenile adjudication for the crime of dishonesty could have been brought out on cross-examination.

" 'One who asserts that the court has abused its discretion bears the burden of showing such an abuse of discretion.' " *State v. Davis*, 256 Kan. 1, 26, 883 P.2d 735 (1994). The defendant has not met this burden. The defendant did not indicate on the record why he desired the witnesses to be sequestered or why the district court was mistaken in its ruling. The defendant does not argue that any of the witnesses changed their testimony or gave testimony which was inconsistent with their prior explanations of the events which occurred through the evening. On appeal, the defendant argues that the district court was mistaken because some of the witnesses knew each other and one had a prior juvenile adjudication for dishonesty. However, these considerations do not mean the trial court abused its discretion in refusing to sequester the witnesses. These concerns could have been brought to the jury's attention through cross-examination. As such, the trial court's ruling was not arbitrary or unreasonable, and the court did not abuse its discretion in refusing to sequester the witnesses.

## VII. UPWARD DURATIONAL DEPARTURE

The defendant was convicted of first-degree felony murder and severity level 4 aggravated battery. The court found that the defendant had a criminal history of I. Neither party objects to the criminal history finding. The defendant was sentenced to the presumptive guidelines sentence of life in prison for the felony-murder conviction. Neither party objects to this sentence. The presumptive guidelines sentence for the aggravated battery conviction, with the defendant's criminal history is 38 to 43 months. The defendant filed a motion requesting a downward durational departure from

this sentence, and the State filed a motion requesting an upward durational departure for this sentence. The State's motion stated:

"The evidence produced at trial showed that the defendant shot two different persons on the occasions without provocation. One person died and the other victim, 16 years old, is maimed for life and will probably suffer medical problems for life. The defendant is totally without remorse. His unprovoked attacks clearly demonstrate that he is a menace to anyone who happens to cross his path. He constitutes a clear and present danger to this community or any community where he happens to reside.

"For the protection of the citizens of this state from the defendant's random attacks, the longest possible term should be imposed.

"The defendant's sentence in the aggravated battery count should be a departure sentence of 86 months, [to] run consecutively to the life term in the murder count."

The court denied the defendant's downward departure motion but granted the State's upward departure motion. Relying on the 1993 sentencing guidelines, the court sentenced the defendant to 86 months for the aggravated battery conviction. In so ruling, the court stated:

"I'm going to find specifically [the] total senseless randomness of this shooting clearly is one of the most aggravating factors you can ever have in any case. Both individuals were not known to this defendant. Upward departure on Larry Goodwin I don't think is really the issue because that's a life sentence, and I can't double that. Even if I personally felt I would like to, I can't. However, the aggravated factors specifically go to Tyrone Elam; and again, because of the total, complete randomness of this shooting, the senselessness, just plain mean, just plain mean, those are the factors I'm finding.

"Having regard to the nature and circumstances of the crime, and history, character and condition of this defendant, it is this Court's opinion that the lowest minimum term is nowhere near appropriate, nor is it consistent with public safety. On the other hand, the maximum sentence on each one of these counts is not only appropriate but demanded."

The defendant appeals the court's imposition of an upward durational departure sentence.

K.S.A. 1993 Supp. 21-4716 provides for departure sentences. It states:

"(a) The sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines for crimes committed on or after July 1, 1993, unless the judge finds substantial and compelling reasons to impose a departure. If the

sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

K.S.A. 1993 Supp. 21-4718 requires that notice be provided to the defendant before any aggravating circumstance may be used to impose a departure sentence. See *State v. Gideon*, 257 Kan. 591, 619, 894 P.2d 850 (1995). Both parties agree that the court relied on the "randomness" of the aggravated battery as an aggravating factor justifying departure. In appealing the departure sentence, the defendant contends that he was not given notice by either the State's departure motion or by the court that the randomness of the crime might be an aggravating factor used to justify departure. The defendant concedes that the State's motion used the term "random attacks." However, according to the defendant, randomness was not alleged as an aggravating factor in and of itself in the State's motion; thus, he was not given proper notice of this factor as required by K.S.A. 1993 Supp. 21-4718.

On the other hand, the State alleges that "randomness" was one of the reasons set out in the State's motion for an upward departure sentence. Specifically, the motion stated, "For the protection of the citizens of this state from the defendant's *random attacks* the longest possible term should be imposed."

It is true that the "random attacks" language was not set out in the main paragraph of the State's motion listing the aggravating factors. However, the State's motion did clearly rely on the randomness of the shooting as a justification for departure. While the defendant is entitled to notice of the aggravating factors, he is not entitled to perfect notice. *Cf. State v. Johnson-Howell*, 255 Kan. 928, 952, 881 P.2d 1288 (1994) (finding that a defendant is only entitled to a fair trial, not a perfect one.) Thus, the State's motion for upward departure gave the defendant adequate notice that the aggravating factor of the randomness of the shooting may be used to impose an upward departure sentence for the aggravated battery conviction.

The defendant contends that the use of this "randomness" factor was improper because the sentencing court combined the randomness of this crime with its dismay at the increasing level of violence

in Wichita and because "randomness" of a crime, in and of itself, is not a substantial and compelling reason for departure.

Addressing the former argument first, the defendant points out that the sentencing judge compared this case to a case the judge had previously heard and that the judge stated he was going to break the chain of violence. The defendant contends that the court's decision to grant an upward departure sentence had little to do with the particular facts of the defendant's case. Instead, according to the defendant, the court's imposition of an upward departure sentence in this case was the court's way of addressing violent crime in general. The defendant asserts that the sentencing court erred in sentencing him based on the frequency with which violent crimes are committed by others. Thus, the defendant contends that the sentencing court's reliance on this factor, with or without notice, was improper and prejudiced the defendant's substantial rights.

The trial court did make comments on the record as to other crimes he had heard about and the rising crime rate in Wichita. However, these comments do not mean that this was the basis for the judge's decision to depart. Instead, the judge based his decision to depart on the "total senseless randomness of this shooting," "the nature and circumstances of the crime, and the history, character and condition of *this* defendant." The sentencing court did not impose this departure sentence based on the increase of crime generally in Wichita. Instead, the court based the departure on the particular facts of this case. It was the defendant's own act of randomly shooting a man walking on a bridge which was the focus of the court's decision to impose the departure sentence. As such, the sentencing court did not err in relying on the randomness of *this* crime when it imposed the departure sentence, and the defendant's substantial rights were not prejudiced.

Finally, the defendant contends that the sentencing court's use of the randomness factor to impose a departure sentence was improper because the randomness of a crime is not a substantial and compelling reason justifying departure. K.S.A. 1993 Supp. 21-4721(d) addresses this court's review of a departure sentence:

"(d) In any appeal from a judgment of conviction imposing a sentence that departs from the presumptive sentence prescribed by the sentencing grid for a crime, sentence review shall be limited to whether the sentencing court's findings of fact and reasons justifying a departure:

"(1) Are supported by the evidence in the record; and

"(2) constitute substantial and compelling reasons for departure."

The defendant takes issue with subsection (2), contending that "randomness" of a crime does not constitute a substantial and compelling reason for departure. "K.S.A. 1993 Supp. 21-4721(d)(2) requires a law test—are the reasons stated on the record for departure adequate to justify a sentence outside the presumptive sentence?" *State v. Richardson*, 20 Kan. App. 2d 932, Syl. ¶ 1, 901 P.2d 1 (1995).

In K.S.A. 1993 Supp. 21-4716(b)(1), the legislature listed several aggravating factors which qualify as substantial and compelling reasons justifying departure. Relying on this list of aggravating factors, the defendant contends that a departure sentence should be imposed for a crime which is purposely committed, with a specific state of mind, or when a particular relationship exists between the defendant and the victim. Since the randomness of a crime is a factor which is opposite from those aggravating factors listed in the statute, the defendant contends that the randomness of a crime is not a substantial and compelling reason justifying departure.

It is true that the aggravating factors listed in 21-4716(b)(1) relate to a particular intent, a particular victim, or a particular relationship between the defendant and the victim. However, this list specifically states that it is not an exclusive list of factors which may justify departure. We find as a matter of law that other factors, such as random shooting, may qualify as a substantial and compelling reason justifying departure. Here, due to the randomness of the crime, the victim had no way to avoid injury as opposed to other victims of aggravated battery who can possibly diffuse a conflict. Thus, the use of the randomness of the crime as an aggravating factor to justify an upward durational sentencing departure was proper in this case.

## VIII. SENTENCING RECUSAL

We have previously held in Issue I that Judge Richard Ballinger

did not err in refusing to recuse himself from presiding over the trial of this defendant even though the red sport utility vehicle involved in the crime belonged to the judge's brother and was stolen from the judge's father's home. However, Judge Ballinger's sentencing of this defendant requires a different analysis. We are convinced that the judge's impartiality at sentencing "might reasonably be questioned . . . not in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances." *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984). Simply stated, a majority of this court is of the opinion that a reasonable person having full knowledge of the facts would reasonably question the impartiality of the judge if the judge was about to sentence a defendant when the judge's brother was the victim of a theft involving the defendant being sentenced. We do not question the trial judge's actual impartiality in this case. Nor do we question the sentence imposed as being unduly harsh. It may well be that a different judge will impose the same sentence. What we do question is the public perception of impartiality. It is vital to the legal system that the public perceive the system as impartial. The majority of this court is of the opinion a reasonable person with knowledge of all the facts would have reasonable doubt as to the judge's impartiality. We therefore vacate the sentence and remand the case to the trial court for resentencing by a different judge.

## IX. CUMULATIVE ERROR

Finally, the defendant claims that all the errors in the case created cumulative error requiring reversal of his felony-murder conviction and a new trial for this charge. In support of this contention, the defendant cites to *State v. Lumbrera*, 252 Kan. 54, Syl. ¶ 1, 845 P.2d 609 (1992):

"Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of circumstances substantially prejudiced the defendant and denied him a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant."

The defendant asserts that the evidence of his guilt was not overwhelming; thus, the cumulative trial errors, considered collectively, are so great as to require reversal of his felony-murder conviction.

The evidence against the defendant is overwhelming, and the defendant's felony-murder conviction will not be reversed. Cumulative error does not exist. In the previous eight issues, only one error has been found, and this error will be remedied at resentencing. One error cannot constitute cumulative error.

Convictions affirmed, sentences vacated, and case remanded for resentencing.