No. 79,625

STATE OF KANSAS, *Appellee*, v. SHAWN A. ALDERSON, *Appellant*.

(972 P.2d 1112)

Opinion filed January 22, 1999.

*James Brent Getty* and *Lisa Nathanson*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, were on the brief for appellant. *Shawn A. Alderson*, appellant, was on the briefs pro se.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

ABBOTT, J.: Defendant Shawn A. Alderson previously appealed his convictions for felony murder and severity level 4 aggravated battery. See *State v. Alderson*, 260 Kan. 445, 922 P.2d 435 (1996) (*Alderson I*).

In *Alderson I*, we held that under the facts of defendant's case, the use of randomness of the crime as an aggravating factor to justify an upward durational sentencing departure was proper. We vacated defendant's sentence, however, because we were convinced that the judge's impartiality at sentencing might reasonably be questioned. We stated:

"[A] majority of this court is of the opinion that a reasonable person having full knowledge of the facts would reasonably question the impartiality of the judge if the judge was about to sentence a defendant when the judge's brother was the victim of a theft involving the defendant being sentenced. We do not question the trial judge's actual impartiality in this case. Nor do we question the sentence imposed as being unduly harsh. . . . It is vital to the legal system that the public perceive the system as impartial. The majority of this court is of the opinion a reasonable person with knowledge of all the facts would have reasonable doubt

as to the judge's impartiality. We therefore vacate the sentence and remand the case to the trial court for resentencing by a different judge." 260 Kan. at 469.

This is defendant's appeal from resentencing wherein a different judge imposed the same upward durational sentencing departure. The appellate defender filed a brief on defendant's behalf, challenging the trial judge's use of "randomness" as a basis for an upward durational departure. Defendant then filed his first pro se brief in March 1998, and a second pro se brief in June 1998. The State filed briefs in response to both of defendant's pro se briefs. The defendant's notice of appeal raises *only* the resentencing issue. Specifically, the appellate defender's brief challenges the upward durational departure sentence for essentially the same reasons that this sentence was challenged in the first appeal. Defendant raises some issues that we decided in *Alderson I,* and his other issues are raised for the first time on appeal.

The facts are fully set out in *Alderson I.* Highly summarized, the facts are as follows:

During the evening of June 15, 1994, defendant and Vernon Harris, Jr., were cruising the Wichita streets in a stolen red Chevrolet Blazer sport utility vehicle. (We vacated the sentence because the Blazer belonged to the sentencing judge's brother and was stolen from the home of the father of the sentencing judge.) Defendant and Harris were part of a three-vehicle caravan that was together throughout the evening, and occupants of the vehicles in the caravan were witnesses to the events that transpired that evening. Defendant occupied the Blazer as both the driver and as a passenger during the evening.

While defendant was driving the Blazer, the caravan saw a fight in a parking lot and the occupants of all three vehicles stopped to watch the fight. The fight involved Larry Goodwin, the victim of the felony murder, and his friend, Jeff Tipton. Three individuals, Robert Ross, Victor Trudo, and Pat Benware had stopped in the parking lot when Goodwin and Tipton pulled into the lot. Tipton accused Ross, Trudo, and Benware of "cutting them off" in traffic. These three individuals then proceeded to beat Tipton into a state of unconsciousness. About the time that Ross, Trudo, and Benware

were beating Tipton senseless, the three-vehicle caravan, led by the Blazer, with defendant as the driver and Harris as a passenger, pulled into the parking lot.

While Tipton was lying on the ground, Harris got out of the passenger side of the Blazer and fired two or three shots into the rear of Goodwin's car. Goodwin was in the driver's seat at the time Harris shot into his car. As we noted in *Alderson I*, Goodwin and Harris never exchanged any words and the record indicated that defendant and Harris had never seen Goodwin or Tipton before the incident.

After Harris fired shots at Goodwin's vehicle, Goodwin drove the car in a circle, but ended up in the same place and facing the same direction from which he started. Goodwin's vehicle was next to the Blazer, facing the opposite direction, with the drivers adjacent to each other. Ross testified that defendant fired three shots from the Blazer's driver's seat into Goodwin's car. One of the bullets struck the back of Goodwin's left shoulder, injuring Goodwin's spine, paralyzing him from the neck down, and causing his death a few days later. 260 Kan. at 448.

After Goodwin was shot, the three-car caravan left the parking lot and resumed cruising the Wichita streets. As they were cruising the streets, they came upon two young persons walking beside the road. Defendant leaned out of the passenger side of the Blazer and fired a shot at the pedestrians. Two members of the caravan looked back and observed that one of the pedestrians had fallen to the ground.

Tyrone Elam was a 16-year-old pedestrian shot by defendant. He testified at defendant's trial that on the evening of June 15, 1994, he was walking with his brother when three cars, including a Blazer, drove by them. Elam heard someone yell, " 'You're as dead as hell,' " and then he fell to the ground. Elam was severely injured by the shot and "part of the bullet is still in his body." Because of this wound, one of Elam's kidneys and 52% of his liver had to be removed, and his lungs collapsed twice. Elam testified that "he had never seen the defendant before the evening of June 15." 260 Kan. at 449.

Defendant was convicted of first-degree felony murder and severity level 4 aggravated battery. The court found that defendant had a criminal history of "I," and neither party objected to the criminal history finding. Defendant was sentenced to the presumptive guidelines sentence of life in prison for the felony murder conviction. Neither party objected to this sentence. The presumptive guidelines sentence for the aggravated battery conviction, with defendant's criminal history, is 38 to 43 months. The court imposed an upward durational departure of 86 months for the aggravated battery conviction due to the "randomness" of the attack on Tyrone Elam.

K.S.A. 1993 Supp. 21-4716 provides for durational departures and states:

"(a) The sentencing judge shall impose the presumptive sentence provided by the sentencing guidelines for crimes committed on or after July 1, 1993, unless the judge finds substantial and compelling reasons to impose a departure. If the sentencing judge departs from the presumptive sentence, the judge shall state on the record at the time of sentencing the substantial and compelling reasons for the departure."

The *Alderson I* court held that defendant's substantial rights were not prejudiced by the grounds for the departure. The judge based his decision to depart on the nature and circumstances of the crime and the history, character, and condition of this defendant, and, most importantly, on the " 'total senseless randomness of this shooting.' " 260 Kan. at 467. Contrary to defendant's assertions, the trial court based its decision to depart on the factors particular to this case. We stated in *Alderson I*:

"It was the defendant's own act of randomly shooting a man walking on a bridge which was the focus of the court's decision to impose the departure sentence. As such, the sentencing court did not err in relying on the randomness of *this* crime when it imposed the departure sentence, and the defendant's substantial rights were not prejudiced." 260 Kan. at 467.

On October 30, 1996, Judge Owens conducted the resentencing. When making sentencing guidelines findings, the judge first noted that because the first-degree murder conviction is an off grid offense and carries its own penalty of life imprisonment, a finding is unnecessary for that offense. However, the aggravated battery re-

quired a sentencing guidelines finding and the judge professed that "[i]t is a crime Severity Level 4 offense, and the defendant's prior criminal history according to the PSI places him in category I."

The judge sustained the State's motion for an upward departure. He remarked that this court had already held in *Alderson I* that the previous finding of randomness was sufficient for a departure factor under the facts of this case, and after reviewing the facts, he agreed that "this is a total random act of senseless unprovoked violence and that if this doesn't cry out for an upward departure, I don't know what set of facts would." Thus, Judge Owens sentenced defendant to life imprisonment on the first-degree murder conviction and 86 months on the aggravated battery with the sentences to run consecutively.

On March 16, 1998, we granted defendant's motion to represent himself. On April 16, 1998, this court granted the appellate defender's motion to withdraw as counsel because defendant had filed a motion to represent himself and that motion had been granted. The appellate defender, however, had already submitted a brief on behalf of defendant in February 1998. On May 4, 1998, the appellate defender's office sent defendant a letter stating that it had been allowed to withdraw from his case and that it was sending him the record on appeal. Defendant filed his first pro se brief in March 1998 and his second pro se brief in June 1998.

Defendant was resentenced on October 30, 1996. His notice of appeal following the resentencing was timely filed. The notice of appeal states only that defendant, through his attorney, appeals his *sentence* imposed on October 30, 1996.

This is defendant's only issue that is appropriately before the court. The defendant did not raise this issue in his pro se briefs. Rather, it was raised by the appellate defender's brief before this court granted defendant's motion to represent himself. The original sentencing judge granted the State's upward departure motion because of the aggravating factor of the total and complete randomness of defendant's act of shooting Tyrone Elam. (*Alderson I.*) The resentencing judge based his upward departure on the same reasons that the original sentencing judge did.

In *Alderson I,* defendant claimed that the use of "randomness" was an improper factor for departure because "randomness" of a crime, in and of itself, is not a substantial and compelling reason justifying departure. In *Alderson I,* we stated that under K.S.A. 1993 Supp. 21-4716(b)(1), the legislature listed several factors which qualify as substantial and compelling reasons justifying departure. Relying on this list of factors, defendant contended that a departure sentence should be imposed only for a crime which is purposefully committed with a specific state of mind, or when a particular relationship exists between defendant and the victim. Since the randomness of a crime is a factor which is opposite from those aggravated factors listed in the statute, defendant contended that the randomness of a crime is not a substantial and compelling reason to justify departure. In *Alderson I,* we held:

"It is true that the aggravating factors listed in 21-4716(b)(1) relate to a particular intent, a particular victim, or a particular relationship between the defendant and the victim. However, this list specifically states that it is not an exclusive list of factors which may justify departure. We find as a matter of law that other factors, such as random shooting, may qualify as a substantial and compelling reason justifying departure. Here, due to the randomness of the crime, the victim had no way to avoid injury as opposed to other victims of aggravated battery who can possibly diffuse a conflict. Thus, the use of the randomness of the crime as an aggravating factor to justify an upward durational sentencing departure was proper in this case." 260 Kan. at 468.

In *Alderson I,* we held that under the facts of this case, the use of randomness of the crime as an aggravating factor to justify an upward departure was proper in defendant's case. Defendant has presented no persuasive authority to cause us to change our original holding. Thus, the resentencing judge did not err in sentencing defendant to the same upward durational departure sentence which we held as a matter of law was not erroneous under the circumstances of this case. This issue fails.

Defendant raises five other issues in his two pro se briefs. None of those issues were raised in the trial court when the case was remanded for resentencing or at any other time, nor has he listed any of the issues in his notice of appeal. In addition, several of the issues were raised in *Alderson I* and decided adversely to defend-

ant. An appellant is bound by the issues raised in the notice of appeal, although we give the notice of appeal a liberal construction to assure justice. *State v. Griffen*, 241 Kan. 68, 69-70, 734 P.2d 1089 (1987). Here, the only issue presented to the trial court was resentencing, and the record reflects that resentencing was all that was presented to and considered by the trial court. Consequently, we are left without jurisdiction to consider defendant's other issues. We also note that if we had jurisdiction, it would be of no comfort to defendant because we find no merits in his arguments.

Affirmed.