(138 P.3d 330)
No. 94,408

SHAWN ALDERSON, *Appellant,* v. STATE OF KANSAS, *Appellee.*

Opinion filed June 30, 2006.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Lesley A. Isherwood*, assistant district attorney, *Nola Tedesco Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before PIERRON, P.J., GREEN and JOHNSON, JJ.

GREEN, J.: Shawn Alderson appeals from the trial court's denial of his K.S.A. 60-1507 motion after an evidentiary hearing. Alderson contends that the trial court erred in denying his claims that his trial counsel was ineffective: (1) in failing to call witnesses that would support his self-defense strategy; (2) in failing to impeach a witness with his prior inconsistent statements; and (3) in not proffering evidence of the victim's prior conviction. Nevertheless, all of the evidence that Alderson claims should have been presented by his trial counsel related to a last-minute, self-defense strategy that Alderson unilaterally decided to present in his testimony at the close of trial. Alderson's trial counsel cannot be found deficient for her failure to present such evidence when Alderson never provided her with any information that he committed the crime in self-defense until his testimony at trial. Moreover, because Alderson was still able to present his theory of self-defense to the jury, we are unable to determine that the performance by Alderson's

trial counsel denied him the right to a fair trial. Therefore, Alderson's ineffective assistance of counsel claim fails. Accordingly, we affirm.

The events in the underlying case took place one evening in June 1994. On the night in question, Alderson was driving a stolen red Chevrolet Blazer with Vernon Harris, Jr., as a passenger when they stopped in a parking lot to watch a fight. Harris got out of the passenger side of the Blazer and fired shots into the rear of a car in which Larry Goodwin was sitting in the driver's seat. Goodwin then drove his car in a circle. Robert Ross, who was one of the people involved in the initial fight, testified that Alderson fired three or four shots from the driver's seat of the Blazer at the driver's side of Goodwin's car. One of the bullets struck Goodwin and caused his death a few days later. Evidence at trial indicated that the bullet that killed Goodwin entered through the driver's side and was shot from a 9 mm caliber handgun.

Initially, Alderson gave a statement denying that he was in the parking lot when the shooting occurred. Nevertheless, at trial, Alderson revealed that he was at the scene. Alderson testified that he had fired two or three shots at Goodwin's car while he was standing outside of the Blazer. Alderson testified that he started shooting after he saw Goodwin's car going in circles and then coming towards him.

After Goodwin was shot, Alderson and Harris left the parking lot in the Blazer. Alderson testified that as he and Harris were driving to a party later that night, they saw two young people standing on a bridge. Alderson and Harris decided to scare the pedestrians. Alderson testified that he picked up a 9 mm gun that was laying in an area between the seats, stuck the gun out of the window, and fired one shot. As they continued driving down the street, Alderson looked back and saw one of the pedestrians fall.

Tyrone Elam was shot as he was walking along the street on the bridge that evening. Just before he was shot, he saw a red sport utility vehicle pass him and heard someone yell, "You're as dead as hell." Elam then fell to the ground. As a result of this incident, Elam suffered extensive injuries. One of his kidneys had to be removed, 52% of his liver was removed, and his lungs collapsed

twice. Part of the bullet, which could not be removed from Elam, could cause medical complications in the future. Elam testified that he had never seen Alderson before that night.

The jury convicted Alderson of felony murder and severity level 4 aggravated battery.

*Critical Facts Discussed By Our Supreme Court*

Alderson appealed his convictions and sentences to our Supreme Court. A critical fact discussed by our Supreme Court on direct appeal was that Alderson had testified at trial that he shot Goodwin in self-defense which contradicted his previous statement in which he denied being at the scene. See *State v. Alderson*, 260 Kan. 445, 448-49, 922 P.2d 435 (1996) (*Alderson I*); *State v. Alderson*, 266 Kan. 603, 972 P.2d 1112 (1999) (*Alderson II*). In addition, our Supreme Court stated that the physical evidence indicated that the bullet that killed Goodwin was fired from the side of the car and slightly from the rear. 260 Kan. at 449.

One of the arguments raised by Alderson on direct appeal was that the trial court's decision to exclude Goodwin's prior aggravated battery conviction denied him his constitutional right to present a full and complete defense. Our Supreme Court stated that the record was clear that Alderson had presented his self-defense theory of the case to the jury. Our Supreme Court noted that Alderson had testified that Goodwin's car almost hit a friend of his and was coming towards him. Furthermore, the jury had been instructed on the self-defense theory. In rejecting Alderson's argument that the trial court erred in excluding evidence of a prior conviction of the defendant, our Supreme Court stated:

"The court did not exclude all evidence of the defendant's theory. Thus, a constitutional issue is not at stake, and this court's standard of review is not unlimited. Instead, we determine whether the district court abused its discretion in excluding evidence of Goodwin's prior conviction for aggravated battery. [Citation omitted.]" 260 Kan. at 461.

Our Supreme Court determined that the trial court did not abuse its discretion in refusing to admit the previous conviction into evidence. 260 Kan. at 463.

Our Supreme Court affirmed Alderson's convictions but vacated the sentences and remanded for resentencing by a different judge. 260 Kan. at 470. At resentencing, the sentencing court imposed an upward durational departure sentence on the aggravated battery offense, based upon the random act of shooting Elam. Our Supreme Court affirmed his resentencing in *Alderson II*, 266 Kan. 603.

*Ineffective Assistance of Counsel Claims Raised in K.S.A. 60-1507 Motion*

Alderson later moved for relief under K.S.A. 60-1507, raising numerous ineffective assistance of counsel claims. On his claims relevant to the instant case, Alderson argued that his trial attorney failed to call witnesses to support his self-defense theory, failed to proffer the nature of Goodwin's prior conviction for aggravated battery, and failed to impeach Ross' testimony at trial with his prior inconsistent statements. After conducting a nonevidentiary hearing on Alderson's 60-1507 motion, the trial court denied Alderson's claims.

Alderson appealed the trial court's decision to this court. *Alderson v. State*, No. 89,220, unpublished opinion filed November 7, 2003 (*Alderson III*). This court determined that the motion raised substantial issues of fact on several issues. This court remanded the case to the trial court for an evidentiary hearing on the issues of whether trial counsel was deficient: (1) in failing to call witnesses to testify consistent with Alderson's theory of self-defense; (2) in failing to proffer the nature of Goodwin's prior conviction; and (3) in not impeaching the testimony of an eyewitness through the use of his prior inconsistent statements. *Alderson III*, slip op. at 5-10.

*K.S.A. 60-1507 Evidentiary Hearing*

The trial court conducted an evidentiary hearing at which Alderson and his trial attorney testified. Alderson's trial attorney testified that she did not learn of Alderson's self-defense theory until he testified at the close of trial. Although they had discussed the case several times before trial, Alderson had never mentioned a self-defense strategy. Alderson's trial attorney testified that Ald-

erson consistently maintained before and during trial that he shot the .38 caliber handgun, not the 9 mm caliber handgun which was later determined to be the murder weapon. On the other hand, Alderson testified that he discussed a self-defense strategy with his trial attorney before trial.

At the conclusion of the hearing, the trial court denied Alderson's ineffective assistance of counsel claims. The trial court found that Alderson's trial attorney was credible and that she did not learn of the need to address a self-defense strategy until after Alderson had testified. The trial court found that Alderson's trial attorney "presented a reasonable defense strategy which does not constitute ineffective assistance of counsel simply because it was not successful." The trial court stated that Alderson's trial attorney did not have the duty to request a continuance to further pursue the self-defense strategy after Alderson's testimony. The trial court found that even if such a request had been made, it likely would not have been granted. The trial court further determined that Alderson had failed to show that his defense was prejudiced by his trial attorney's performance.

*Standard of Review*

In reviewing the trial court's decision on Alderson's ineffective assistance of counsel claims, we must determine whether the trial court's findings of fact have substantial support in the evidence and whether the trial court's conclusions of law follow as a matter of law from those facts. See *State v. Davis*, 277 Kan. 309, 315, 85 P.3d 1164 (2004).

The test used in determining whether trial counsel's assistance was so defective as to require reversal of Alderson's convictions is twofold. First, Alderson must establish that his counsel's performance was deficient, meaning counsel made errors so serious that his or her performance was less than that guaranteed by the Sixth Amendment to the United States Constitution. Second, Alderson must establish that his counsel's deficient performance prejudiced the defense, which requires a showing that his counsel's errors deprived him of a fair trial. See *Davis*, 277 Kan. at 314.

Moreover, in reviewing an ineffective assistance of counsel claim, courts do not generally second-guess counsel's tactical decisions:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [Citation omitted.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation omitted.]" *Strickland v. Washington,* 466 U.S. 668, 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh. denied* 467 U.S. 1267 (1984).

Alderson's claims violate the above principles. As we explain below, Alderson's attorney had no duty to further develop Alderson's last-minute self-defense theory under the facts and circumstances of this case.

## Was trial counsel's performance deficient?

Alderson contends that his trial attorney was ineffective for failing to call witnesses to corroborate his self-defense theory, for failing to impeach Ross with his prior inconsistent statements, and for failing to secure evidence of Goodwin's prior conviction. Alderson suggests that this evidence would have strengthened his self-defense theory and resulted in a different outcome at trial.

Although Alderson testified at the 60-1507 hearing that he discussed his self-defense theory with his attorney before trial, the trial court found that Alderson was not credible. When reviewing a trial court's factual findings, we do not pass on the credibility of witnesses or reweigh conflicting evidence. See *State v. Moore,* 269 Kan. 27, 30, 4 P.3d 1141 (2000). "The credibility of evidence is for the trial court's consideration. [Citation omitted.]" *Taylor v. State,* 251 Kan. 272, 290, 834 P.2d 1325 (1992). Here, the trial court found that the testimony from Alderson's attorney was credible.

This finding is supported by the record. The self-defense strategy was not mentioned in the opening statement of Alderson's attorney. After the opening statement, Alderson never complained to the trial court that his attorney was not pursuing a strategy that they had discussed during the investigation stage of the case.

*Failure to Call Witnesses*

Recognizing that the reasonableness of defense counsel's investigation decisions depends critically upon information supplied by the defendant, the United States Supreme Court in *Strickland*, 466 U.S. at 691, stated:

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically upon such information."

Until Alderson's testimony at trial, his attorney consistently presented a defense strategy that Alderson had not fired the bullet that killed Goodwin. At the 60-1507 hearing, Alderson's trial attorney stated that she did not subpoena Harris and Patrick Benware, another eyewitness to the shooting, because they had stated that Alderson had fired the gun that killed Goodwin. Their statements would conflict with the defense strategy that Alderson had not fired the bullet from the 9 mm caliber handgun which killed Goodwin. The decision of whether to call a particular witness is a matter of trial strategy. *Mullins v. State*, 30 Kan. App. 2d 711, 716, 46 P.3d 1222 (2002). "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. [Citation omitted.]" *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004). Based on the trial strategy that Alderson and his attorney had discussed, these witnesses would have been harmful to the defense.

In denying the K.S.A. 60-1507 motion, the trial court found that the defense strategy presented by Alderson's attorney was reason-

able. We agree. Although there was evidence that Alderson had shot the 9 mm caliber handgun which killed Goodwin, there was other evidence indicating that Harris might have been the one who shot and killed Goodwin. Specifically, the evidence showed that both Harris and Alderson fired shots on the evening in question, that a bullet from a 9 mm gun had killed Goodwin, and that a 9 mm caliber handgun had been recovered from a station wagon parked at Harris' house. Goodwin told the police and his wife before he died that a black man had shot him. Alderson was white, and Harris was black. Moreover, the State did not request an aiding and abetting instruction. This means that the State would be required to prove beyond a reasonable doubt that Alderson had fired the fatal shot into Goodwin. Based on this evidence and Alderson's statements to his attorney that he had not shot the 9 mm caliber handgun, his trial attorney was reasonable in pursuing a defense strategy that Alderson had not fired the bullet which killed Goodwin.

Likewise, Ross' prior inconsistent statements to police and at the preliminary hearing and Goodwin's prior conviction for aggravated battery were inconsistent with the planned defense strategy that Alderson had not shot Goodwin.

Recognizing that a failure to investigate does not constitute ineffective assistance of counsel when the essential and foundational information required to initiate an investigation is withheld from the defendant's attorney by the defendant, the Tenth Circuit Court of Appeals in *United States v. King*, 936 F.2d 477, 480 (10th Cir. 1991), stated:

"In determining whether a defendant has been afforded effective assistance of counsel, the adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own action or inaction. [Citation omitted.] An attorney's failure to investigate 'cannot be charged as a claim of "ineffective assistance of counsel" when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself.' [Citation omitted.]"

In that case, the court held that trial counsel's failure to interview or subpoena two witnesses was not ineffective assistance of counsel when the defendant failed to provide his trial counsel with the

names, addresses, and telephone numbers of those individuals who could assist in developing his defense. 936 F.2d at 480.

The *King* court cited *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947 (7th Cir. 1986), a case involving similar circumstances. In *McGinnis*, the Seventh Circuit Court of Appeals determined that defense counsel's failure to investigate the whereabouts of a potential witness did not render him ineffective when his client failed to tell him about the witness until the day of trial. The court indicated that under such circumstances, the defendant, not defense counsel, was responsible for the witness not being located before trial. 796 F.2d at 958.

*McGinnis* involved defense counsel's failure to investigate potential witnesses when the defendant withheld any information pertaining to the identity of such witness from his attorney until trial. Here, Alderson withheld any information that he had shot Goodwin in self-defense from his attorney until he testified on the last day of trial. As the trial court at the 60-1507 hearing pointed out, Alderson's trial attorney was placed in a dilemma once Alderson abruptly changed his theory of defense. Due to Alderson's failure to disclose any information concerning a self-defense strategy, his trial attorney had not investigated or prepared for a self-defense strategy, nor had she subpoenaed any witnesses who could help support such a defense.

Alderson was responsible for completely changing the defense strategy when he presented his testimony at trial. When Alderson testified at trial, his trial attorney had based the entire defense strategy on his statements that he had not shot the murder weapon, the 9 mm caliber handgun. As Alderson's attorney, she was justified in relying on the truthfulness of his statements when deciding the defense strategy to pursue. See *Barnes v. Thompson*, 58 F.3d 971, 979 (4th Cir. 1995) (defense counsel may rely on truthfulness of client's confidential statements when deciding how to pursue investigation). After Alderson's unilateral last-minute decision, his trial attorney attempted to make the best of a bad situation, given her very limited options at this late stage of trial. She argued to the jury Alderson's self-defense theory and requested a self-defense instruction.

Alderson contends that his case is similar to *State v. Greene*, 272 Kan. 772, 37 P.3d 633 (2001). There, our Supreme Court determined that defense counsel was ineffective by failing to request a continuance of the trial to prepare a defense based on information that was given to him by the defendant during jury selection. Nevertheless, in *Greene*, the defendant gave the information to his counsel before opening statements and before any evidence was presented at trial. Here, after the jury had been presented with the majority of the evidence that was to be introduced at trial, Alderson made the decision to present a completely different defense strategy. Alderson's last-minute self-defense theory caused his attorney to have to break one of the most fundamental rules in trial practice: Never to do anything inconsistent with your theory of defense.

As set forth in *King*, 936 F.2d at 480, the reasonableness of defense counsel's action is conditioned by the defendant's own action or inaction. Based on the situation with which Alderson's attorney was presented, that is, she had relied on Alderson's statements to present a completely different defense to the jury and Alderson's self-defense theory came out at the close of trial, she did everything that a reasonable attorney would do in her situation. We cannot say that Alderson's trial attorney was ineffective for failing to request a continuance to attempt to secure evidence to support his self-defense theory.

*Victim's Prior Conviction*

Alderson has not furnished us with the necessary evidence to evaluate whether his attorney was ineffective in failing to proffer Goodwin's prior aggravated conviction. At the evidentiary hearing, Alderson failed to provide any information about the circumstances surrounding Goodwin's prior aggravated battery conviction. Without such information, this court is unable to determine whether Goodwin's prior conviction would have been admissible evidence under *State v. Arteaga*, 257 Kan. 874, 891-95, 896 P.2d 1035 (1995).

*Did Defense Counsel's Performance Deny Alderson a Fair Trial?*

Even if we were to find that defense counsel's performance was deficient, Anderson must still meet the prejudice prong of the test

for ineffective assistance of counsel. Under the prejudice prong of the ineffective assistance of counsel test, Alderson must show that his counsel's errors deprived him of a fair trial. See *Davis*, 277 Kan. at 314.

In rejecting Alderson's argument on direct appeal that the trial court's exclusion of Goodwin's prior conviction denied him his constitutional right to a complete defense, our Supreme Court stated:

"The record is clear that the defendant was allowed to present his self-defense theory of the case. The trial court instructed the jury on the self-defense theory. The defendant testified that Goodwin's car almost hit a friend of his and was headed toward him. In refusing to present Goodwin's prior conviction of aggravated battery into evidence, the court simply excluded one piece of evidence which, according to the defendant, was relevant to the defense theory. The court did not exclude all evidence of the defendant's theory. Thus, a constitutional issue is not at stake, and this court's standard of review is not unlimited. Instead, we determine whether the district court abused its discretion in excluding evidence of Goodwin's prior conviction for aggravated battery. See *State v. Arteaga*, 257 Kan. 874, 894, 896 P.2d 1035 (1995)." 260 Kan. at 461.

Our Supreme Court determined that no constitutional issue was involved in the exclusion of Alderson's prior conviction from evidence. The purpose of an ineffective assistance of counsel claim "is to ensure a defendant's constitutionally protected right to a fair trial." *Greene*, 272 Kan. at 777. Here, Alderson's attorney presented his theory of defense to the jury. She allowed him to testify that he shot Goodwin in self-defense. She argued self-defense in closing argument. Moreover, she requested and received a jury instruction on the self-defense theory. Because Alderson was able to present his theory of defense to the jury, he was not denied his constitutional right to a fair trial.

*Trial Court's Findings*

Finally, Alderson contends that the trial court relied on speculation in making its findings at the K.S.A. 60-1507 hearing. Alderson points to a statement made by the trial court at the 60-1507 hearing that defense counsel was put into the dilemma of asking for a 48-hour continuance to get some witnesses back into court because her client had decided that the defense strategy was not working and decided to strike out on his own with a new defense.

The trial court further stated that although it was not speaking for the judge who presided over Alderson's trial, a continuance would not likely have been granted. These statements were made from the bench shortly after the trial court heard testimony from Alderson and his trial attorney. These statements merely reflect an awareness by the trial court that Alderson's attorney, who had pursued one strategy throughout trial, was placed in a dilemma when she was ambushed by Alderson when he presented a new defense strategy in his testimony at trial. As a result, Alderson's argument on this issue lacks merit.

Affirmed.