NOT DESIGNATED FOR PUBLICATION

No. 116,407

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GERARDO GONZALEZ, JR.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; ROBERT J. FREDERICK, judge. Opinion filed March 9, 2018. Affirmed.

*Michelle A. Davis*, of Kansas Appellate Defender Office, for appellant.

*Susan Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., GREEN, J., and HEBERT, S.J.

PER CURIAM: Gerardo Gonzalez Jr. appeals his convictions of aggravated burglary, attempted felony theft, and misdemeanor criminal damage to property, arguing that the district court erred when it denied his motion for new trial based upon ineffective assistance of counsel. Gonzalez additionally appeals his sentencing, arguing that the district court erred when it used his criminal history to increase his sentence without first proving his criminal history to a jury beyond a reasonable doubt. Because neither of Gonzalez' arguments are persuasive, we affirm.

1

The State charged Gonzalez with aggravated burglary, attempted felony theft, and misdemeanor criminal damage to property. The State's charges were based upon an allegation that Gonzalez had broken into the home of Osvaldo Erives, the husband of his ex-girlfriend, Sonia Cisneros-Erives on April 16, 2014. Gonzalez' two children with Cisneros also resided in Osvaldo's home.

Before his jury trial, Gonzalez filed a notice that he would be presenting an alibi defense at trial. Gonzalez asserted that Robert Austin Nugent, Sergio Galvez, Juan Ayala, his two children, his mother, and his father would testify in support of his alibi defense.

About two weeks before his April 14, 2015 jury trial, Gonzalez requested that he be appointed new counsel because his current counsel, Kenny Estes, disagreed with him on trial strategy. Gonzalez explained to the district court that he wanted Estes to use his extensive criminal history at his trial to establish that he had "always been honest for all the things [that he had] done"; Gonzalez' criminal history score under the Kansas Sentencing Guidelines Act was an A. The district court denied Gonzalez' request, explaining to Gonzalez that his strategy was injudicious and Estes was in charge of strategic decisions.

At Gonzalez' jury trial, the State's primary witnesses were Osvaldo and the two children. Osvaldo testified that after picking the children up from school on April 16, 2014, he returned home to find Gonzalez in his house. He testified that when Gonzalez saw him, Gonzalez ran into a bedroom, at which point he heard a window break. Osvaldo explained that he then ran into the backyard where he saw Gonzalez climbing out of the broken bedroom window. Both children testified that they saw their father in the backyard after he had jumped through the broken bedroom window.

Although Gonzalez had filed a notice of alibi defense, Gonzalez did not present an alibi defense at trial. Estes, who had reserved Gonzalez' opening statement, told the jury that through Gonzalez' testimony, it would learn the following:

> "What you're actually going to hear is [] that indeed Mr. Gonzalez was in that house that day. You're going to hear about how those kids were not lying about seeing their dad in that back yard that day, and you're going to hear about why . . . [Gonzalez] was in that house that day."

Once Gonzalez was on the witness stand, he testified that he was drunk and on prescription medications when he happened to walk by Osvaldo's house. He testified that he was angry at Osvaldo and Sonia because he rarely got to see his children. He indicated that because of his anger, he decided to enter Osvaldo's house to "move[] stuff around" and "trash the place." He testified he never entered Osvaldo's home with the intent to steal anything.

The jury ultimately found Gonzalez guilty on all counts. Yet, before sentencing, Gonzalez moved pro se for a new trial, alleging that Estes provided ineffective assistance of counsel. Gonzalez asserted that Estes had refused to let him present his alibi defense, pressuring him to commit perjury about being in Osvaldo's house. Based upon this motion, the district court appointed Gonzalez new counsel.

The district court held a hearing on Gonzalez' motion where both Gonzalez and Estes testified. Gonzalez' testimony repeated the allegations within his motion. He testified that following the children's testimony about seeing him in the backyard, Estes told him they were changing trial strategies. According to Gonzalez, Estes told him to testify that he was just there to "trash the place," not to "burglarize [it]," which would result in him being convicted of only misdemeanor criminal damage to property.

3

Estes testified that when he filed the notice of alibi, he listed everyone that could potentially be a part of the "alibi thread"; this included the witnesses who could testify about the "bad blood" between Gonzalez, Sonia, and Osvaldo, as well as the two witnesses who could allegedly provide Gonzalez with an alibi—Nugent and Ayala. Estes explained that he contacted both Nugent and Ayala before trial to corroborate Gonzalez' alibi but neither provided very strong evidence that they were with Gonzalez when the crimes occurred. Estes admitted that, at one point, he mistakenly believed that Nugent had been in jail on April 16, 2014, and told Gonzalez of this mistaken belief. He testified, however, that after the trial, he learned that Ayala was in jail on April 16, 2014.

Concerning the change in defense strategy, Estes explained that a few days before trial he told Gonzalez that even if his children testified that they saw him at Osvaldo's house, "they still have to prove [that] you were there for a theft." According to Estes, over the next few days, Gonzalez began questioning him about the elements of aggravated burglary. He asked Estes if he could be convicted of a felony if he was "just there to like mess things up?" Estes testified that this concerned him because Gonzalez was adamant about going to trial and testifying; therefore, he emphasized to Gonzalez he must tell the truth while testifying. He explained that because of Gonzalez' concerning questions, he reserved his opening "out of an abundance of caution." He testified that when he asked Gonzalez what he was going to do after his children had testified, Gonzalez told him he was going to testify that he just went to Osvaldo's house to "mess[] things up." Estes testified that he told Gonzalez he should only testify that he was, in fact, in Osvaldo's house to just "mess[] things up" if this was the truth.

At the end of the hearing, the district court denied Gonzalez' motion for new trial based upon ineffective assistance of counsel. The district court found Estes' testimony was more credible than Gonzalez' testimony, stating that it "believed Mr. Estes when he [said] that he did not even remotely suggest to Mr. Gonzalez that he commit perjury in order to avoid these convictions." The district court found that Gonzalez was the sole

4

"mastermind" behind switching defenses during trial, forcing Estes' hand in switching defenses by his intended testimony. Thus, the district court held that any failure to present the alibi defense was caused by Gonzalez, not Estes.

The district court then sentenced Gonzalez to a controlling sentence of 143 months' imprisonment followed by 24 months' postrelease supervision.

*Did the District Court Err by Denying Gonzalez' Motion for New Trial Based Upon Ineffective Assistance of Counsel?*

Appellate courts review a district court's decision to deny a motion for new trial for an abuse of discretion. *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016). District courts abuse their discretion if they make errors of fact, errors of law, or otherwise unreasonable decisions. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). Whether counsel provided ineffective assistance of counsel, however, involves a mixed question of law and fact. Therefore, appellate courts review the district court's factual findings for substantial competent evidence and legal conclusions de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). To establish that counsel provided ineffective assistance of counsel, defendants must prove (1) that counsel's performance was constitutionally deficient, and (2) that counsel's constitutionally deficient performance resulted in prejudice. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). Defendants establish prejudice by proving that there was a reasonable probability the jury would have reached a different verdict but for their counsels' deficient performance. 300 Kan. at 882.

On appeal, Gonzalez argues that the district court erred by denying his motion for new trial because the facts supported that Estes errantly decided to abandon Gonzalez' alibi defense. Gonzalez contends that Estes abandoned the alibi defense because of his mistaken belief that Nugent was in jail on April 16, 2014. Gonzalez also repeats his

allegations that Estes pressured him to commit perjury. He asserts that Estes "advised him to try for misdemeanor convictions like criminal damage to property and trespassing by saying he had been at the house to damage it but not to burglarize it." Gonzalez concludes that based upon Estes' "erroneous belief that [he] did not 'have an alibi,' counsel did not assist [him] in presenting his desired alibi defense."

The State asserts that any mistake that Estes may have made regarding Nugent being in jail is irrelevant because the evidence supports that Gonzalez, not Estes, decided to abandon the alibi strategy. The State asserts that the evidence also supports that Estes did not advise Gonzalez to commit perjury. The State then notes that this court has held that an attorney's effectiveness is "'is necessarily conditioned by the defendant's own action or inaction. [Citation omitted.]'" *Alderson v. State*, 36 Kan. App. 2d 29, 37, 138 P.3d 330 (2006). Moreover, the State points out that the district court made a credibility determination in favor of Estes and against Gonzalez.

Indeed, it is the district court's credibility determination in favor of Estes and against Gonzalez that controls the outcome of Gonzalez' challenge. Appellate courts "do not pass on witness credibility or reweigh conflicting evidence" when reviewing ineffective assistance of counsel claims. *Alderson*, 36 Kan. App. 2d at 35. Thus, claims of ineffective assistance of counsel based upon an errant credibility determination will fail.

Here, although Gonzalez does not explicitly assert that the district court erred in making its credibility determination against him, Gonzalez' argument would require this court to believe his testimony over the testimony of Estes. This is because regardless of any mistaken advice regarding Nugent being in jail, for Gonzalez' argument to succeed, one would have to accept that it was Estes' decision to abandon the alibi defense. But, as stated earlier, the district court found that it was Gonzalez who made this decision by insisting he was going to testify that he was in Osvaldo's home to "mess things up" and "trash the place." The district court also explicitly found Estes' testimony far more

6

credible than Gonzalez' testimony. Thus, Gonzalez' argument fails because it would require this court to reject or ignore the district court's credibility determination, which we cannot do based upon our standard.

Nevertheless, even assuming Gonzalez could reach the prejudice prong of the ineffective assistance of counsel test, nothing within the record on appeal supports that his alibi defense would have worked. Again, Gonzalez' argument is that Estes was ineffective for failing to present the alibi defense. To successfully establish that Estes was ineffective, however, Gonzalez must establish that there was a reasonable probability, but for Estes' failure to present the alibi defense, that the jury would have found him not guilty. See *Sola-Morales*, 300 Kan. at 882. Nevertheless, neither Nugent nor Ayala testified at Gonzalez' hearing on his motion for new trial. Indeed, the only information regarding either's potential testimony came from Estes, who testified that neither provided a strong alibi for Gonzalez, since Ayala was actually in jail when the crimes occurred. Given this information, it is readily apparent that any deficient performance on Estes' part did not result in prejudice because there was not a reasonable probability that Gonzalez' alibi defense would have succeeded at trial.

As a final note, Gonzalez mentions below that he argued he should get a new trial because his child "rescinded her testimony" about seeing him in the backyard. In his motion for new trial, Gonzalez did assert he was entitled to a new trial because of the "rescinded" testimony, which he called newly discovered evidence. In his appellate brief, however, outside of mentioning his argument concerning the rescinded testimony in passing, Gonzalez has not actually argued this point. Thus, assuming Gonzalez is attempting to raise this argument on appeal, he has raised it incidentally, meaning it is abandoned. See *State v. Sprague*, 303 Kan. 418, 425, 362 P.3d 828 (2015). Yet, even if Gonzalez had not abandoned his argument, it is worth mentioning that his child did not truly rescind her testimony. Instead, the record supports the fact that after being pressured by her grandmother, Gonzalez' mother, and another relative to "tell the truth," she became

7

uncertain if the man she saw in Osvaldo's backyard was her father. Thus, the district court's ruling that her statements did not constitute newly discovered evidence because her later statements indicating that she did not see her father in Osvaldo's backyard were not as credible as her trial testimony was patently reasonable.

For the foregoing reasons, none of Gonzalez' arguments are persuasive. As a result, Gonzalez' arguments fail.

*Did the District Court Err When Sentencing Gonzalez?*

Gonzalez argues that the district court violated his constitutional rights as explained in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), by using his criminal history to increase his sentence without first proving his criminal history to a jury beyond a reasonable doubt. Gonzalez recognizes that our Supreme Court rejected this exact argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002). Moreover, our Supreme Court continues to cite *Ivory* as valid law. See, e.g., *State v. Shaylor*, 306 Kan. 1049, 1050, 400 P.3d 177 (2017). Because this court is duty bound to follow the holdings of our Supreme Court absent an indication that our Supreme Court is moving away from its prior precedent, we reject Gonzalez' argument and affirm his sentence.

Affirmed.